**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **RONNY ALEXANDER RAMIREZ CANALES,**<br>Plaintiff,<br>v.<br>**MENESES LAW, PLLC; MENESES ENTERPRISES, LLC; FRANCES CHRISTINE MENESES; JULIO CARLOS MENESES; RACHEL VICTORIA ROBERTSON; DIANA ALFONSO; and ALEXANDRA ACOSTA,**<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>4:26-cv-03748<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff Ronny Alexander Ramirez Canales brings this civil action against Defendants Meneses Law, PLLC; Meneses Enterprises, LLC; Frances Christine Meneses; Julio Carlos Meneses; Rachel Victoria Robertson; Diana Alfonso; and Alexandra Acosta a/k/a "Dra. Acosta" arising from the operation of an ongoing, highly structured enterprise that systematically targets vulnerable immigrant clients and steers them into fraudulent Violence Against Women Act ("VAWA") self-petitions they neither sought nor qualified for.

This enterprise operates through a coordinated network of attorneys and non-attorney staff using standardized, high-volume processes to manufacture abuse narratives, obtain client signatures without informed consent, and submit immigration filings to U.S. Citizenship and Immigration Services ("USCIS") under penalty of perjury without the informed consent and authorization of the clients.

Plaintiff sought lawful family-based immigration relief through his United States citizen wife. Defendants instead diverted him into a VAWA-based filing supported by false and

unauthorized allegations of abuse, collected substantial legal fees, and then initially refused to release his client file when he attempted to investigate the submission.

Plaintiff is one of hundreds if not thousands of victims of a repeatable and scalable system designed not to evaluate eligibility, but to produce filings that appear to satisfy VAWA criteria regardless of the underlying facts. This enterprise did not depend on the truth of client experiences, but on the consistent construction of narratives sufficient to support immigration filings and generate revenue.

## I. NATURE OF THE ACTION

1. This case arises from an immigration-law fraud and malpractice scheme.

2. Plaintiff retained Defendants to pursue a lawful family-based immigration petition through his United States citizen wife. Defendants instead placed him into a Violence Against Women Act ("VAWA") self-petition, supported by an alleged sworn declaration depicting his wife as a serial abuser. Allegations Plaintiff says are false, that he never made, and that he never authorized.

3. Defendants did not disclose this substitution. Their sales personnel were instructed not to use the word "VAWA" and to describe the matter only as a "360" which is a reference to USCIS Form I-360. Their written representation agreement likewise omits the word "VAWA" and lists only form numbers. The omission was deliberate as a non-lawyer client could research "360" but would be met with a form that provides a vehicle for many different avenues for relief under immigration law.

4. The object of the scheme was money. Defendants charged Plaintiff a flat fee of $13,550.00, collected it through interstate electronic payments, and prepared and filed the VAWA package with U.S. Citizenship and Immigration Services ("USCIS") using a fabricated abuse narrative, a preparer certification falsely attesting that Plaintiff had reviewed and verified the petition, and an interpreter certification falsely attesting that the petition had been read to him in his language.

5. The plaintiff communicated with no attorney about the contents of the filing prior to its filing with USCIS.

6. The abuse narrative was Defendants' invention. Plaintiff never told Defendants that his wife abused him. He sought a family-based petition based on a genuine, ongoing marriage. Defendants nonetheless prepared and filed a petition portraying Plaintiff as the

victim of severe psychological, emotional, verbal, physical, sexual, and financial abuse, supported by a declaration containing statements he never made and never authorized.

7. When Plaintiff grew suspicious, terminated the representation, and asked for his file, Defendants refused to produce it on a pretext, and Defendant Alexandra Acosta telephoned Plaintiff on or about April 8, 2026 and warned him that he would have "problems with immigration" if he did not continue with the firm.

8. Plaintiff does not ask this Court to adjudicate his immigration eligibility, to direct any action by USCIS, or to review any administrative determination. He seeks damages and equitable relief for Defendants' deceptive, disloyal, and unauthorized conduct in the course of paid legal representation. Each claim turns on Defendants' conduct toward Plaintiff, not on the merits of any immigration filing.

9. Plaintiff's experience is not isolated. Defendants applied the same pipeline, the same scripts, the same concealment, the same reused signatures, and the same file-withholding to numerous other Spanish-speaking immigrant clients.

10. Three such clients, identified in this Complaint, without their names, as Clients A, B, and C, were each steered into an undisclosed abuse-based VAWA self-petition by the identical methods used against Plaintiff, as set out in Section V below.

## II. JURISDICTION AND VENUE

11. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.

12. This Court independently has alienage diversity jurisdiction under 28 U.S.C. § 1332(a)(2). Plaintiff is a citizen of Honduras and is not a lawful permanent resident of the United States. Each individual Defendant, Frances Christine Meneses, Julio Carlos Meneses, Rachel Victoria Robertson, Diana Alfonso, and Alexandra Acosta, is a citizen of Texas. Meneses Law, PLLC has a single member, Frances Christine Meneses, who is a citizen of Texas. Meneses Enterprises, LLC has two members, Frances Christine Meneses and Julio Carlos Meneses, each a citizen of Texas. No member of either entity is a citizen or subject of Honduras or any other foreign state. Complete alienage diversity therefore exists, and the amount in controversy exceeds $75,000, exclusive of interest and costs, through actual damages, fee forfeiture, statutory damages, exemplary damages where available, treble damages, and attorney's fees.

13. This independent basis for federal jurisdiction supports each state-law claim regardless of the disposition of the RICO claims; the state-law claims do not depend on supplemental jurisdiction alone. In the alternative, this Court has supplemental jurisdiction over the

state-law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the RICO claims.

14. Venue is proper under 28 U.S.C. § 1391(b). Defendants reside and conduct business in this District; Defendants accepted Plaintiff as a client, prepared his immigration filings, and submitted them from this District; and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

15. This Court has personal jurisdiction over each Defendant. Each individual Defendant is a Texas resident who worked from offices in Texas and committed the acts complained of in Texas. Each entity Defendant is a Texas entity that maintains its principal office in Texas, contracted with Plaintiff in Texas, performed services in Texas, transmitted immigration documents from Texas, and caused injury to Plaintiff in Texas.

## III. PARTIES

16. Plaintiff Ronny Alexander Ramirez Canales is a natural person residing in Horizon City, Texas. He is a citizen of Honduras.

17. Defendant Meneses Law, PLLC is a Texas professional limited liability company that holds itself out as an immigration law firm, with offices at 2900 North Loop West, Suite 300, Houston, Texas 77092. Its sole or principal member is Frances Christine Meneses.

18. Defendant Meneses Enterprises, LLC is a Texas limited liability company formed on or about November 14, 2023, sharing the same Houston address as Meneses Law, PLLC. Its managers are Julio Carlos Meneses and Frances Christine Meneses. Meneses Enterprises, LLC is used to receive, hold, or route revenue generated by Meneses Law, PLLC.

19. Defendant Frances Christine Meneses is an attorney licensed in Texas (State Bar of Texas No. 24106299). She is the owner, principal member, and supervising attorney of Meneses Law, PLLC, and a co-manager of Meneses Enterprises, LLC. She signed Plaintiff's representation agreement and a Form G-28 and appeared as an attorney of record in Plaintiff's immigration matter. She is sued in her individual capacity.

20. Defendant Julio Carlos Meneses is the Vice President and operational head of Meneses Law, PLLC, and a co-owner and co-manager of Meneses Enterprises, LLC. He is not an attorney. He is responsible for the firm's day-to-day operations, including supervision of the marketing, sales, and intake functions, and oversight of the firm's revenue and financial operations through Meneses Enterprises, LLC. He is sued in his individual capacity.

21. Defendant Rachel Victoria Robertson is an attorney licensed in Texas (State Bar of Texas No. 24127898, as listed on the attorney bar-number field of Plaintiff's Form I-485). She signed a Form G-28, Notice of Entry of Appearance as Attorney or Accredited

Representative, dated July 10, 2025, entering her appearance as an attorney of record for Plaintiff before USCIS in connection with Plaintiff's Forms I-360, I-131, I-765, and I-485, at the request of the petitioner, and listing Meneses Law's Houston address. She is also identified in Plaintiff's USCIS filing package as the preparer of Plaintiff's Forms I-360, I-485, and I-765, and she signed the preparer certifications on those forms, dated July 10, 2025, **under penalty of perjury**. She is sued in her individual capacity.

22. Defendant Diana Alfonso is a non-attorney employee, agent, or contractor of Meneses Law, PLLC who participated in the intake, translation, and execution of Plaintiff's immigration documents. She signed the interpreter certifications on Plaintiff's Forms I-360, I-485, and I-765, dated July 10, 2025, **under penalty of perjury**. She is sued in her individual capacity.

23. Defendant Alexandra Acosta is an employee, agent, or representative of Meneses Law, PLLC and/or Meneses Enterprises, LLC who is held out by the firm and on social media as "Dra. Acosta." Acosta is the firm's public-facing social-media representative, appears in the firm's promotional and live video content **giving legal advice despite not having a license to practice law in the United States**, and performs sales and client-retention functions. On or about April 8, 2026, she telephoned Plaintiff, reprimanded him for attempting to close his case, and warned him that he would have problems with immigration if he canceled. She is sued in her individual capacity.

## IV. STATUTORY AND REGULATORY BACKGROUND

### *A. The VAWA self-petition process.*

24. The Violence Against Women Act ("VAWA") is a federal statutory framework that permits certain noncitizens to self-petition for lawful immigration status without the participation or knowledge of a qualifying United States citizen or lawful permanent resident spouse or parent.

25. VAWA permits individuals who have been battered or subjected to extreme cruelty by a qualifying relative to "self-petition" for immigrant classification, including lawful permanent residency. A qualifying relative is a U.S. citizen or lawful permanent resident spouse or former spouse, a U.S. citizen child 21 years or older, or a U.S. citizen parent or former parent.

26. Unlike traditional family-based immigration petitions, a VAWA self-petition does not permit the alleged abuser to participate in the process. It is adjudicated based largely on documentary submissions prepared and provided by the petitioner and his counsel.

27. The evidentiary standard applicable to VAWA petitions permits adjudicators to consider "any credible evidence," including sworn declarations, affidavits, and narrative statements prepared on behalf of the petitioner.

28. As a result, the petitioner's personal declaration, often drafted with the assistance of counsel, serves as a central and frequently dispositive component of the application.

29. Depending on the applicant's individual case, a VAWA self-petitioner in the United States may seek employment authorization ( aka work permit) through a pending adjustment of status application or, after approval of the VAWA self-petition, under the employment-authorization category applicable to approved VAWA self-petitioners.

30. The acquisition of a work permit stands as the most significant and immediate advantage of submitting a VAWA application, a fact that Defendants emphasize extensively throughout their marketing efforts..

31. Additional immigration benefits, including deferred action and eligibility to adjust status to lawful permanent residence, may follow approval of the VAWA petition.

***B. Susceptibility to abuse and federal consequences of false filings.***

32. The structure of the VAWA process (particularly its reliance on written declarations, the absence of an adversarial party, and the availability of immediate and interim benefits) makes it uniquely vulnerable to abuse when exploited by unscrupulous actors.

33. The process can be manipulated where individuals or entities fabricate, exaggerate, or otherwise misrepresent allegations of abuse to create the appearance of eligibility for immigration benefits.

34. The federal government has long recognized fraud in immigration filings, including in VAWA self-petitions, as a serious enforcement concern. USCIS's Fraud Detection and National Security Directorate exists in part to identify and refer such fraud, and federal authorities have warned the public against "notario fraud" and high-volume immigration filing operations that mass-produce inaccurate or frivolous filings.

35. In December of 2025, the federal government issued a policy update in order to combat fraud given the alarming increase in VAWA self petitions which had grown by 360% between 2020 and 2024.[1]

36. A petitioner whose VAWA self-petition contains material misrepresentations may be subject to severe consequences under federal immigration law, including findings of fraud or willful misrepresentation under 8 U.S.C. § 1182(a)(6)(C)(i), which can result in permanent inadmissibility and denial of immigration benefits.

37. A false filing can also expose an applicant to denial, fraud or misrepresentation findings, and, depending on agency enforcement decisions, referral for further enforcement action such as deportation proceedings and even federal criminal charges.

38. Knowingly false statements made under penalty of perjury in immigration filings, and the fraudulent preparation and submission of immigration documents, may also constitute

---

[1] See https://www.uscis.gov/newsroom/alerts/uscis-restores-integrity-to-the-vawa-domestic-abuse-program-after-finding-rampant-fraud - last visited April 30, 2026.

violations of 18 U.S.C. § 1546 (fraud and misuse of visas, permits, and other immigration documents). Defendants' unauthorized signature practices furthered the alleged mail- and wire-fraud scheme.

39. Immigration judges have relied on false or inconsistent allegations made in USCIS filings to make adverse credibility findings against applicants in subsequent removal proceedings, further compounding the harm caused by fraudulent or inaccurate submissions.

40. The integrity of the VAWA process depends on truthful submissions, competent legal and ethical guidance, and informed client participation. When licensed attorneys submit applications with invented, untrue, or exaggerated information, the system is compromised, and the intent of Congress in enacting VAWA is subverted.

41. VAWA was designed to protect legitimate victims of domestic abuse and extreme cruelty subject to an imbalance of power and control based on family relation and vulnerability. It was not designed to be a substitute pathway for noncitizens who otherwise qualify for family-based immigration but have not been subjected to battery or extreme cruelty.

42. This background is pleaded to explain the materiality of Defendants' conduct. Plaintiff does not ask the Court to decide any question of immigration eligibility.

## V. GENERAL FACTUAL ALLEGATIONS: THE FIRM-WIDE PIPELINE

43. Plaintiff alleges the firm-wide facts in this Section based on his own client file, documents reviewed from other former clients, interviews of similarly situated clients, public materials published by Defendants, and other information obtained before filing after reasonable inquiry.

### *A. The firm operates a high-volume operation in which nearly every client is filed as a VAWA self-petition.*

44. Meneses Law is not a general immigration practice. It is estimated that the vast majority of the cases the firm files are VAWA self-petitions, with the small remainder consisting of T-visa applications. In some months the firm has filed as many as 400 VAWA petitions which is a volume that is incompatible with the individualized assessment of battery or extreme cruelty that a genuine VAWA self-petition requires.

45. The firm generates this volume through mass social-media marketing on platforms including Facebook and TikTok. Its advertisements represent that any person with a United States citizen spouse, or a citizen child over 21, can "fix their papers" and remain in the country regardless of criminal history or prior unlawful entries. The firm's management has stated that these advertisements reach audiences in the millions.

### *B. The marketing and intake apparatus conceals the VAWA theory.*

46. Prospective clients who respond to the advertising are routed to telephone "consultations" with non-attorney sales personnel whom the firm presents as "licenciadas" or legal

representatives. These personnel are compensated by commission for each client they sign and work against monthly sales quotas.

47. Sales personnel are instructed to tell callers that simply having a qualifying United States citizen relative makes them eligible to "adjust status," and are instructed not to use the term "VAWA" and instead to describe the process as a "360." The purpose of this instruction is to prevent prospective clients from discovering that the petition they are being sold is an abuse-based self-petition requiring allegations of battery or extreme cruelty.

***C. A departmentalized assembly line manufactures the abuse narrative without attorney contact.***

48. After a client signs and pays, the matter moves through a departmentalized assembly line in which no single participant performs the function of a supervising lawyer and the client speaks with no attorney. The client is passed from marketing, to a customer-service function, to the commissioned sales "licenciadas," to a non-attorney intake team that conducts a recorded telephone interview, to a separate group of writers who draft the supporting declaration, to assemblers who compile the package, to a forms department, and finally to a corrections or legal function that routes the package out for filing.

49. The writers who draft the abuse declaration do not speak with the client. They are tasked with producing a narrative that satisfies VAWA's battery-or-extreme-cruelty element, and in practice they exaggerate, recharacterize, or fabricate facts to fit that element, converting ordinary marital or family friction into allegations of severe and chronic abuse. The resulting declarations across different clients share strikingly similar language and structure, reflecting mass production rather than individual experience.

50. The firm rotates the nominal reviewing or certifying attorney among several attorneys, so that the attorney whose signature appears on a client's forms is frequently not the same attorney across files and has had no contact with the client. Firm attorneys used in this rotating certification role have included various attorneys identified within the firm as Robert Torrey, Todd Henson, Perpetua Salvatus-Guerrero, Ana V. Lopez and Defendant Robertson, and remote preparation staff have been supervised by a non-attorney manager.

51. The certifying attorney does not review the immigration forms nor the declaration with the client prior to its submission to USCIS and, in the ordinary course, never speaks with the client at all.

***D. The firm reuses a single digitized client signature and a general consent form.***

52. At intake, clients are required to sign a single signature block, which the firm captures, stores, and reuses as a digitized signature. The firm then applies that digitized signature, and a general consent form signed at intake, to immigration forms, attorney

representation documents, and the client's personal declaration, without separate, informed review of each document's contents by the client prior to their submission to USCIS. Clients are not given copies of their filed packages and, when they later request their files, are refused or told the file is protected from disclosure.

***E. Other clients experienced the identical pipeline.***

53. Client A is a Houston-area man who learned of the firm from coworkers and sought to obtain lawful status through his United States citizen stepson, after several other attorneys had told him he would have to leave the country to process his case. At the firm he met only a non-attorney "legal assistant," never an attorney. He was told the firm would file a "360" / "self-petition" that was "the same" as adjusting through his stepson, with no need to leave the country and with a work permit and travel permit—and he was never told it was VAWA. He signed an English-language retainer on or about December 3, 2024 whose description of services was identical to Plaintiff's ("Prepare the I-360/ I-765/ I-485 with legal argument and documents") for a flat fee of approximately $13,500. At the first appointment he was made to sign a signature block three times, which the firm sealed and announced would be "the signature used for all your documents." His "declaration" interview was conducted by telephone by a non-attorney who instructed him to be alone; the firm then fabricated and exaggerated an abuse narrative he never gave—portraying his stepson as a threatening gun owner who left weapons in the open and made him fearful and unable to sleep, and falsely stating that he had loaned money that was never repaid. He was rushed to electronically sign the declaration and forms through a link in under two minutes, without being permitted to read them. The firm filed the package (Client A received a USCIS biometrics appointment notice), refused his repeated demands to speak with an attorney and to obtain his file, terminated him on 30 days' notice, and refused any refund. Client A never met with an attorney to review his applications nor his declaration prior to its filing with USCIS.

54. Client B is a Dallas-area man who found the firm through its Facebook videos in or about March 2024 and sought to obtain lawful status through his United States citizen daughter. He met only a "licenciada," never an attorney, and was told the firm would file an "I-360" to fix his status through his citizen child with no need to leave the country and was never told it was VAWA. He signed an English-language retainer on or about December 19, 2024, which was not translated; a staff member only read him where to sign and how to pay. The flat fee was $13,500 (or $14,500 on installments), with roughly $5,500 down and $500 monthly. His "declaration" interview was conducted by telephone in or about September and lasted approximately 45 to 50 minutes; he reported no abuse and described his daughter as ordinary. The declaration was prepared in English, and he was directed to sign it by initials through a link approximately three times, without being permitted to read it. An independent attorney later identified the filing as a VAWA

self-petition and found exaggerations and falsehoods in the declaration, including an ordinary driving incident recast as grave danger. USCIS received the package in or about early January, which Client B learned only from a coworker rather than from the firm; he received a biometrics appointment in February. The firm refused to release his file and gave no refund, and later sent him a cancellation-of-representation document to sign, one of approximately seven or eight clients with whom he was familiar, who received identical notices in the same week. Client B never met with an attorney to review his applications nor his declaration prior to it's filing with USCIS.

55. Client C is a man married to a United States citizen wife, with a prior removal and a criminal record, who was recruited virtually and steered into an "I-360" "self-petition" with adjustment of status, a work permit, and a travel permit, on financing of either $2,550 or $4,550 down plus separate USCIS residence and waiver fees, was told it was "the same" as adjusting through his citizen wife, with no need to leave the country, and was not told at the outset that it was VAWA. The firm coached him that "stress" in his marriage and "verbal," "psychological," or "financial" friction (not physical abuse) would supply the petition's basis, directed him to a firm "psychologist" for a "diagnosis," and coached the witnesses who would supply his support letters to describe marital "situations." Only after USCIS issued a Request for Evidence, and only after Client C repeatedly pressed, did firm representatives admit that "the I-360 is known as VAWA," that the petition required abuse or extreme cruelty, and that he had never been told this. Firm representatives further warned that if he stopped pursuing the petition, USCIS would place him in removal proceedings before an immigration judge. Client C never met with an attorney to review his applications nor his declaration prior to it's filing with USCIS.

56. The experiences of Clients A, B, and C are materially identical to Plaintiff's and to one another: each sought a family-based path; each was sold an undisclosed abuse-based VAWA self-petition described only as a "360" or "self-petition"; each dealt only with non-attorney staff; each had a fabricated or exaggerated abuse narrative prepared without his participation; each had a reused electronic signature applied to documents he was not permitted to read; each paid a flat fee in the same range; each was refused his file, refused a refund, or both; and none of them ever met with an attorney to review their applications nor their declarations prior to those documents being filed with USCIS. These are not coincidences. They are the predictable output of a single, standardized pipeline.

## VI. PLAINTIFF'S EXPERIENCE

### *A. Plaintiff sought a family-based petition through his U.S. citizen wife.*

57. Plaintiff has resided in the United States since June 2021. He is married to Kehila Paulette Kimble Rojas, a naturalized United States citizen, with whom he shares a

daughter born in March 2023 and two stepchildren. Plaintiff and Ms. Kimble Rojas married on September 9, 2023.

58. In or about May 2024, while researching immigration attorneys, Plaintiff encountered Defendants' advertisements on Facebook and TikTok. After he submitted his contact information, the firm telephoned him and represented that he could ***fix his immigration status without leaving the United States*** which was a representation that caught his attention because five other attorneys he had consulted told him he would have to depart the country.

59. Plaintiff contacted Defendants because he wanted to pursue a lawful family-based petition through his United States citizen wife. He did not contact Defendants because he believed he was a victim of domestic violence, he did not ask Defendants to prepare a VAWA self-petition, and he did not understand that Defendants intended to file an abuse-based petition. He relied on Defendants' expertise to choose the lawful and appropriate strategy.

60. On or about May 16, 2024, Plaintiff paid a $149.00 consultation fee by Visa card ending 2010. He then participated in a call with three individuals who presented themselves as "abogados", which is the Spanish word for lawyers, and who told him he qualified for a "family petition." They did not mention "abuse" or "VAWA." They described Form I-360 as a way to fix his status without leaving the country.

***B. Defendants charged Plaintiff before he signed, and routed the engagement through his wife's email.***

61. Defendants quoted Plaintiff a flat fee, describing a "standard" fee of $25,000 reduced for a "limited time" to approximately $13,550.00, payable with an initial charge and monthly installments of approximately $500.00.

62. Defendants charged $3,550.00 to Plaintiff's Visa account on May 22, 2024, two days before Plaintiff electronically signed the representation agreement on May 24, 2024. The agreement is dated May 22, 2024 on its face, but the Vinesign electronic-signature audit trail (Signer ID T8juTfwwACEV1fJaDsZAvNsH) reflects execution on May 24, 2024 at 9:51 a.m. CDT from IP address 99.35.156.65. Defendants therefore collected fees before any agreement was signed.

63. The signature request for the representation agreement was sent to kehilakimble95@gmail.com, ***the email address of Plaintiff's wife***. That same account served as a primary channel of communication during the representation, even though Defendants would later submit a sworn declaration in Plaintiff's name accusing that same wife of severe abuse.

64. In Section 1 ("Legal Services to be Provided"), the representation agreement states only that "Attorneys will provide the following services: Prepare the I-360/ I-765/ I-485 with legal argument and documents." It contains no mention of "VAWA," no reference to a self-petition, no description of any abuse-allegation requirement, and no disclosure of the factual content Defendants intended to submit in Plaintiff's name. The agreement further recites that the firm is not obligated to investigate the truth of the matters submitted. The agreed flat fee was $13,550.00, with monthly payments of approximately $500.00 due on the tenth of each month.

65. Plaintiff made the following payments by interstate electronic card transactions: $149.00 on May 16, 2024 (Visa ending 2010); $3,550.00 on May 22, 2024; $2,000.00 on May 23, 2024 (Visa ending 2010); $4,000.00 on May 30, 2024 (Visa ending 2010); $500.00 on February 13, 2025 (Mastercard ending 8073); $500.00 on February 26, 2025 (Visa ending 3663); $1,000.00 on March 31, 2025 (Mastercard ending 8073); $500.00 on May 7, 2025 (Mastercard ending 8073); $500.00 on June 5, 2025 (Mastercard ending 8073); and $500.00 on July 9, 2025 (Visa ending 9934). Plaintiff paid Defendants a total of $13,199.00 against the agreed flat fee of $13,550.00, and Defendants claim the unpaid balance against him. Each payment was processed through interstate electronic payment networks.

***C. Plaintiff received no meaningful attorney advice and gave no informed consent.***

66. Plaintiff never had a consultation with Defendant Frances Meneses about VAWA eligibility, about the difference between a family-based petition and an abuse-based self-petition, or about the legal risks of filing false abuse allegations.

67. He never spoke with Defendant Frances Meneses about the content of the applications or declaration filed in his name.

68. Plaintiff never spoke with Defendant Robertson about his applications or his declaration.

69. His communications were handled by staff.

70. His phone communications with staff were recorded by or at the direction of one or more of the Defendants.

71. These recorded phone calls were in the possession, custody or control of one or more of the Defendants as of the filing of the Plaintiff's applications and declaration with USCIS.

72. No attorney employed by Defendants reviewed the factual allegations of the declaration with Plaintiff, in Spanish or otherwise, before filing.

73. Defendants did not explain to Plaintiff that a VAWA self-petition required truthful allegations of battery or extreme cruelty by his spouse; that submitting false statements to USCIS could expose him to denial, fraud findings, and removal consequences; or that he

had a more direct lawful alternative in a family-based petition. Defendants did not obtain Plaintiff's informed consent before using his name and signature to pursue an abuse-based theory.

74. To the extent Defendants referenced "stress," household financial pressure, or "indifferences" in the relationship, Plaintiff understood those statements as part of a benign, family-based explanation.

75. Defendants did not disclose that they would submit an abuse-based VAWA self-petition accusing his wife of battery or extreme cruelty, and Plaintiff did not authorize such allegations.

76. Defendants appeared before USCIS as Plaintiff's counsel of record through two Forms G-28. At the outset of the representation, Defendant Frances Meneses signed a Form G-28 appearing as an attorney of record for Plaintiff's immigration matter and listing Meneses Law's Houston address.

77. On or about July 10, 2025, which was the same date the petition package was certified and submitted, Defendant Rachel Victoria Robertson signed a separate Form G-28 entering her appearance as an attorney of record for Plaintiff before USCIS in connection with Plaintiff's Forms I-360, I-131, I-765, and I-485, at the request of the petitioner.

78. By their respective Forms G-28, Defendants Meneses and Robertson each accepted professional responsibility for Plaintiff's immigration matter before USCIS.

***D. The declaration filed in Plaintiff's name was false and unauthorized.***

79. On or about July 10, 2025, Defendants prepared and caused to be submitted to USCIS a "Declaration of Ronny Alexander Ramirez Canales in Support of I-360 Application" stating that Plaintiff suffered psychological, emotional, verbal, physical, sexual, and financial abuse during his marriage.

80. The declaration was prepared in English, which Plaintiff cannot read, and was not reviewed with him line by line in Spanish before filing.

81. Among other things, the declaration represented that Plaintiff's wife psychologically manipulated him, turned his children against him, isolated him from friends and coworkers, used his immigration status to control him, treated him as a servant, mocked his speech and heritage, physically blocked him from leaving rooms during arguments, restricted his access to money and transportation, and subjected him to surveillance and a "suffocating atmosphere."

82. These statements were not true, were not made by Plaintiff, and were not authorized by him.

83. Plaintiff did not tell Defendants that he was abused, did not provide any factual basis for an allegation of sexual abuse, and did not authorize the portrayal of ordinary marital ups and downs as severe and chronic abuse.

84. Defendant Robertson did not review the I-360, I-485, or I-765, or the declaration, with Plaintiff before submission.

85. Defendant Alfonso did not interpret or read those forms or the declaration to Plaintiff before submission.

86. Defendant Frances Meneses did not review those forms with Plaintiff before submission, and no licensed attorney employed by Defendants did so.

***E. Defendants filed the package and concealed Plaintiff's contact information from USCIS.***

87. On or before July 10, 2025, Defendants prepared Plaintiff's Forms I-360, I-485, and I-765 and the declaration and caused them to be submitted to USCIS. USCIS acknowledged receipt of the Form I-360 by Form I-797C, Notice of Action, Receipt Number EAC2690152710, dated July 31, 2025. The petition remains pending.

88. On the Form I-360 transmitted to USCIS, Defendants entered "N/A" for the petitioner's daytime telephone, mobile telephone, and email address, although Defendants possessed Plaintiff's telephone number and a working email address of record. The effect was to route all USCIS communications through Defendants rather than to Plaintiff.

***F. Defendants refused to release Plaintiff's file on a pretext.***

89. Several months into the representation, Plaintiff became suspicious and sought independent legal advice. At least one attorney cautioned him that he should obtain his file and review it carefully. In or about February 2026, Plaintiff requested his file and terminated Defendants' representation.

90. On or about March 6, 2026, Plaintiff executed a Release of Confidential Information authorizing Meneses Law to release his entire file to successor counsel, and executed a limited-scope representation agreement with that firm to obtain and evaluate his file. Successor counsel transmitted the signed authorization to Meneses Law.

91. By email dated March 12, 2026, sent from "Abogada Meneses" at Cmeneses@meneses.law, the firm email address of Defendant Frances Christine Meneses, to Plaintiff's successor counsel, Defendants declined to produce the file, asserting that the signatures on the authorization were "typed signatures rather than executed signatures" and demanding either a "properly executed authorization signed by the client (handwritten electronic signature or wet signature)" or a properly executed Form G-28, purportedly under Texas Disciplinary Rule of Professional Conduct 1.05.

92. That position was pretextual: throughout the representation, Defendants had themselves relied on electronic and copied signatures for Plaintiff's own immigration filings. Defendants withheld the file to delay discovery of the contents of the VAWA package and to impede Plaintiff's ability to assess and remediate his exposure.

***G. Defendants threatened Plaintiff to deter his departure.***

93. On or about April 8, 2026, after Plaintiff requested his file and stated his intent to terminate, Defendant Alexandra Acosta telephoned Plaintiff, reprimanded him for attempting to close his case, and told him that if he canceled he would have "problems with immigration" and should continue with Defendants "to stay protected."

94. The statement was designed to dissuade Plaintiff from leaving, from securing his file, and from investigating or correcting the filing made in his name.

***H. Plaintiff's injury and the immigration trap Defendants created.***

95. As a direct result of Defendants' conduct, Plaintiff paid Defendants fees for a representation he did not authorize; remains subject to payment obligations Defendants claim under the agreement; and incurred and continues to incur the costs of recovering his file, investigating the contents of the false filing, and obtaining successor counsel to evaluate and remediate the petition filed in his name.

96. Had Defendants disclosed that they intended to file an abuse-based VAWA self-petition supported by allegations Plaintiff says were false, Plaintiff would not have retained Defendants, would not have paid them $13,550.00, and would not have continued paying. He sought, and would have pursued, the lawful family-based process instead.

97. Defendants' unauthorized VAWA filing created a legal predicament that did not exist before Defendants acted. Before Defendants filed the package, Plaintiff was an immigrant seeking lawful advice regarding a potential family-based path through his United States citizen wife.

98. After Defendants filed the package, Plaintiff became the named petitioner on a pending abuse-based VAWA self-petition supported by a sworn declaration he says is false and unauthorized.

99. Plaintiff cannot simply ignore the filing. The Form I-360 remains pending before USCIS, and the related filings have generated immigration consequences connected to the pending package.

100. Because the filing was made in Plaintiff's name, any later adjudication, interview, request for evidence, notice of intent to deny, withdrawal, denial, or fraud review may require Plaintiff to explain, correct, or disavow sworn factual assertions that Defendants submitted as though they were his own.

101. Plaintiff also cannot safely proceed with the VAWA filing as submitted. To do so would require him to maintain, adopt, or fail to correct abuse allegations against his wife that he says are false.

102. Nor does withdrawal place Plaintiff back where he was before Defendants acted: withdrawal or correction of the filing may cause USCIS to scrutinize the petition, the related adjustment and work-authorization filings, and the factual basis for any benefit connected to the package.

103. Plaintiff therefore requires successor immigration counsel to evaluate the safest lawful method to correct the record and to protect against a fraud or willful-misrepresentation finding.

104. The problem is not Plaintiff's underlying immigration status. It is Defendants' creation of a federal immigration record in Plaintiff's name that Plaintiff must now remediate.

105. These remediation costs are concrete, foreseeable, and directly caused by Defendants' conduct.

106. A lawful family-based representation would not have required Plaintiff to withdraw or correct a false VAWA declaration, to defend against a potential fraud or misrepresentation finding, or to incur the cost of successor counsel to undo a filing he never authorized.

107. Plaintiff does not seek damages for any speculative future immigration outcome; he seeks the reasonably foreseeable cost of the corrective work Defendants' conduct made necessary, as set out in Section XII.

## VII. DEFENDANT-SPECIFIC ROLES

108. *Frances Christine Meneses (management and certification).*

a. Frances Meneses owns and supervises Meneses Law, signed Plaintiff's representation agreement, signed a Form G-28, and appeared as a responsible attorney of record before USCIS.

b. She directs or approves the firm's operative conduct, including the policies that produced Plaintiff's filing: the omission of "VAWA" from client contact and from the retainer, the digitized copy-and-paste signature practice, and the file-withholding practice.

c. As an attorney of record who directed the firm's work, she caused the petition package bearing the false declaration and certifications to be prepared and submitted in Plaintiff's name.

d. She personally signed a G-28 and sent or directed the March 12, 2026 file-refusal email from Cmeneses@meneses.law.

e. She never spoke with nor reviewed the applications or the Plaintiff's declaration with him prior to its submission to USCIS.

109. *Julio Carlos Meneses (operations and finance).*

a. Julio Meneses is the operational head of the firm and a co-owner of Meneses Enterprises, LLC.

b. He oversees the firm's marketing, sales, intake, and financial operations, participates in the monthly management meetings at which firm policy is set, and maintains Meneses Enterprises, LLC as the vehicle through which the firm's revenue is received, held, or routed.

c. Plaintiff does not allege that Julio Meneses personally signed or transmitted a document in Plaintiff's individual matter; he is named as a conspiracy and state-law Defendant based on his ownership, management, and direction of the operation that produced Plaintiff's filing.

110. *Rachel Victoria Robertson (appearance, preparation, and certification).*

a. Robertson appeared as an attorney of record for Plaintiff before USCIS by a Form G-28 dated July 10, 2025, and is identified as the preparer of Plaintiff's Forms I-360, I-485, and I-765, on each of which she signed the preparer certification, dated July 10, 2025, **under penalty of perjury**, attesting that the petitioner had reviewed the completed petition and supporting documents and confirmed they were complete, true, and correct.

b. No such review occurred, and Plaintiff confirms he never reviewed or approved the petition.

c. Robertson never spoke with nor reviewed the applications or Plaintiff's declaration with him prior to their submission to USCIS.

d. Robertson undertook professional legal responsibility for Plaintiff's matter and certified **under penalty of perjury** a client review and verification that had not occurred.

111. *Diana Alfonso (interpretation and execution).*

a. Alfonso signed the interpreter certification on each of Plaintiff's Forms I-360, I-485, and I-765, dated July 10, 2025, **under penalty of perjury**, attesting that

she had read every question and instruction to Plaintiff and that he verified the accuracy of every answer.

b. No such interpretation occurred.

c. Alfonso executed these certifications as part of the firm's standardized signing process.

112. *Alexandra Acosta (sales and retention enforcement).*

a. Acosta is a sales and client-retention representative of the firm and its public social-media face.

b. The firm's compensation structure rewarded her sales performance with quota-based bonuses, reflecting her knowledge of, and participation in, the firm's volume-driven sales model.

c. She appears in the firm's promotional and live video content, in which she provides immigration-process information to the public.

d. She does not have a license to practice law in the United States.

e. She also hosts Live sessions on social media wherein **she provides direct legal counsel and advice to audience members** despite not having a license to practice law in the United States.

f. She actively discourages clients from seeking second opinions both personally and on her hosted live sessions.

g. She placed the April 8, 2026 retention call to Plaintiff described above, by which she sought to prevent Plaintiff from leaving the firm, recovering his file, and discovering the contents of the filing.

113. Meneses Law, PLLC is the legal entity through which the representation was performed and is liable for the acts and omissions of its members, employees, and agents under principles of agency, respondeat superior, and ratification with respect to Plaintiff's state-law claims.

114. Meneses Enterprises, LLC is the financial vehicle used to receive, hold, or route revenue generated by the conduct alleged.

## VIII. THE RICO ENTERPRISE

115. At all relevant times, Meneses Law, PLLC was an "enterprise" within the meaning of 18 U.S.C. § 1961(4), a legal entity engaged in, and whose activities affect, interstate and foreign commerce.

116. Meneses Law accepts clients, transmits documents and payments by interstate wire, and submits filings to a federal agency.

117. The substantive RICO "person" under Section 1962(c) is Defendant Frances Christine Meneses, who is a "person" within the meaning of 18 U.S.C. § 1961(3) and is legally distinct from the enterprise.

118. Frances Meneses is a natural person who is separate from, and not identical to, Meneses Law, PLLC, even though she is its owner and principal member. Plaintiff does not rely on an association-in-fact enterprise.

119. A Section 1962(c) defendant must participate in the operation or management of the enterprise's affairs. Frances Meneses did so. She owns and supervises the firm, directs or approves its operative conduct, appears as an attorney of record before USCIS, and sets the policies under which client filings are solicited, prepared, and submitted, including the policies that produced Plaintiff's filing. She does not merely carry out others' directions, she sets them.

120. The enterprise has an existence and purpose separate from the pattern of racketeering activity: it is a functioning law firm with offices across the United States and abroad, employees, advertising, banking, and a large client base. The enterprise is the legal entity Meneses Law, PLLC, which is legally distinct from the individual Defendants who operate it and participate in its affairs.

## IX. PATTERN OF RACKETEERING ACTIVITY

121. Frances Meneses conducted the enterprise's affairs through a pattern of at least two related predicate acts such as Predicates F-1, F-2, and F-3, as set out in Section IX. Predicates F-1 (the concealing fee-inducement wire) and F-3 (the March 12, 2026 concealment wire) are each independently documented and personally attributable to Frances Meneses, and together satisfy the two-predicate requirement without regard to Predicate F-2. The acts are related and amount to, or threaten, continued activity. Plaintiff incorporates by reference the summary and table below:

### Summary of Predicate Acts and Related Overt Acts

The following table summarizes the racketeering predicate acts detailed in this Section and identifies, separately, related acts pleaded as overt acts in furtherance of the scheme rather than as racketeering predicates. The predicate acts are charged under 18 U.S.C. §§ 1341, 1343, and 1546. For the avoidance of doubt, the April 8, 2026 telephone call (O-1) is pleaded as an overt act in furtherance of the conspiracy under 18 U.S.C. § 1962(d) and as evidence of concealment, and is not relied upon as a racketeering predicate act. For the substantive claim under 18 U.S.C. § 1962(c) (Count X), Plaintiff relies on Predicates F-1, F-2, and F-3 as the predicate acts personally attributable to Frances Christine Meneses. Predicates R-1, R-2, and R-3—the false

statements in immigration applications executed by Rachel Victoria Robertson—are pleaded as related acts of racketeering activity within the enterprise's pattern and as overt acts in furtherance of the conspiracy charged in Count XI; Plaintiff does not rely on Robertson as a substantive § 1962(c) defendant. The remaining entries are pleaded as related wires, document-fraud acts, and overt acts establishing the scheme, its relatedness and continuity, and the § 1962(d) conspiracy.

| # | Date | Actor / Recipient | Channel | Statement or act, and why false or unlawful | Type / Injury |
|---|---|---|---|---|---|
| RW-1 | May 16, 2024 | Sales personnel → Plaintiff | Telephone (interstate wire) | Represented a "family petition" / "360" and concealed the abuse-based VAWA theory to induce the consultation fee and retention. | Related wire / overt act — $149 consultation fee; inducement |
| F-1 | May 22–24, 2024 | Meneses Law / Frances Meneses → Plaintiff | Vinesign platform (interstate wire) | Retainer described the service only as I-360/I-765/I-485 and omitted the VAWA/abuse nature; fee charged before signature. | § 1343 wire fraud — $3,550 + payment plan |
| R-1 | July 10, 2025 | Robertson → USCIS | USCIS filing | False preparer certification on Form I-360 that the petitioner reviewed and verified the petition. | § 1546 document fraud (for financial gain) — false petition filed |
| R-2 | July 10, 2025 | Robertson → USCIS | USCIS filing | False preparer certification on Form I-485. | § 1546 document fraud (for financial gain) |
| R-3 | July 10, 2025 | Robertson → USCIS | USCIS filing | False preparer certification on Form I-765. | § 1546 document fraud (for financial gain) |
| A-1 | July 10, 2025 | Alfonso → USCIS | USCIS filing | False interpreter certifications (I-360/I-485/I-765) that each form was read to and verified by Plaintiff. | § 1546 document fraud (for financial gain) — overt act / related predicate |
| F-2 | On/about July 2025 (received 7/31/2025) | Frances Meneses → USCIS | Mail / USCIS e-filing (interstate wire) | As attorney of record, caused the unauthorized, false petition package to be filed. | §§ 1341/1343/1546 (for financial gain) — false petition; remediation |
| RW-2 | May 2024 – July 2025 (10 payments) | Meneses Law / Meneses Enterprises → card networks | Interstate card / ACH | Continued collection of fees while the abuse-based nature of the service was concealed. | Related payment wires / overt acts — $13,199 total |
| F-3 | March 12, 2026 | Frances Meneses (Cmeneses@meneses.law) → successor counsel | Email (interstate wire) | Pretextual refusal to release the file to conceal the filing and protect the proceeds. | § 1343 wire fraud — file-recovery costs |
| O-1 | April 8, 2026 | Alexandra Acosta → Plaintiff | Telephone | Warned of "problems with immigration" if Plaintiff canceled, to deter departure and discovery. | OVERT ACT — not a § 1961(1) predicate; supports § 1962(d) |

***A. Predicate acts attributable to Rachel Victoria Robertson (18 U.S.C. § 1546).***

122. *Predicate R-1 (Form I-360 preparer certification)*.

a. On July 10, 2025, in Houston, Texas, Robertson signed, **under penalty of perjury**, the preparer certification on Plaintiff's Form I-360, a petition required by the immigration laws within the meaning of 18 U.S.C. § 1546(a), attesting that

the petitioner reviewed the completed petition and supporting documents and confirmed the information was complete, true, and correct.

b. Robertson's attestation was false.

c. Plaintiff conducted no such review, never approved the petition, and the declaration contained statements he never made.

d. Robertson never met with nor reviewed the petition or supporting documents with the Plaintiff.

e. Robertson prepared and/or reviewed/approved the petition for filing and knew the Plaintiff had not reviewed or verified it.

f. Her certification was made in furtherance of the scheme and for the purpose of financial gain which was to complete and preserve the fee-producing filing for which Defendants had been paid, and created the appearance of a valid, client-authorized filing.

123. *Predicate R-2 (Form I-485 preparer certification)*.

a. On July 10, 2025, Robertson signed the materially identical preparer certification on Plaintiff's Form I-485, again **under penalty of perjury**, knowing that no client review had occurred.

b. Robertson's attestation was false.

c. Plaintiff conducted no such review, never approved the application, and the declaration contained statements he never made.

d. Robertson never met with nor reviewed the application or supporting documents with the Plaintiff.

e. Robertson prepared and/or reviewed/approved the application for filing and knew the Plaintiff had not reviewed or verified it.

f. This was a separate false statement in an application required by the immigration laws under 18 U.S.C. § 1546(a), made for the purpose of financial gain.

124. *Predicate R-3 (Form I-765 preparer certification)*.

a. On July 10, 2025, Robertson signed the materially identical preparer certification on Plaintiff's Form I-765, again **under penalty of perjury**, knowing that no client review had occurred.

b. Robertson's attestation was false.

c. Plaintiff conducted no such review, never approved the application, and the declaration contained statements he never made.

d. Robertson never met with nor reviewed the application or supporting documents with the Plaintiff.

e. Robertson prepared and/or reviewed/approved the application for filing and knew the Plaintiff had not reviewed or verified it.

f. This was a separate false statement in an application required by the immigration laws under 18 U.S.C. § 1546(a), made for the purpose of financial gain.

***B. Predicate acts attributable to Frances Christine Meneses.***

125. *Predicate F-1 (wire fraud—fee inducement through a concealing retainer)*.

a. On May 22, 2024, Meneses Law transmitted the representation agreement, which Frances Meneses signed on behalf of the firm, by interstate wire through the Vinesign electronic-signature platform to the email address kehilakimble95@gmail.com for execution, and the agreement was executed on May 24, 2024 at 9:51 a.m. CDT (Vinesign Signer ID T8juTfwwACEV1fJaDsZAvNsH; IP address 99.35.156.65).

b. Section 1 of the agreement described the service only as "Prepare the I-360/ I-765/ I-485 with legal argument and documents" and omitted any disclosure that the representation would proceed as an abuse-based VAWA self-petition.

c. Defendants charged Plaintiff $3,550.00 by interstate card transaction on May 22, 2024, just two days **before** execution.

d. The transmission and the charge were made to induce payment for a service whose abuse-based nature was concealed.

e. Frances Meneses, who signed the agreement and appeared as attorney of record, is responsible for the firm's use of the wires.

126. *Predicate F-2 (Section 1546 / mail or wire fraud—causing the false petition package to be filed as attorney of record)*.

a. On or about July 2025, Frances Meneses, as owner, supervising attorney, and an attorney of record before USCIS, caused the petition package to be prepared and submitted in Plaintiff's name through Meneses Law.

b. The package contained Plaintiff's declaration and the Forms I-360, I-485, and I-765, together with preparer and interpreter certifications representing that Plaintiff had reviewed and verified the submissions.

c. Plaintiff did not review or verify them, and no attorney reviewed the declaration with him before filing.

d. The act was committed for the purpose of financial gain and to complete and obtain payment for the fee-generating filing. USCIS acknowledged receipt of the Form I-360 by Form I-797C, Receipt No. EAC2690152710, dated July 31, 2025.

127. *Predicate F-3 (wire fraud—concealment wire to impede discovery and protect the proceeds of the scheme)*.

a. On March 12, 2026, an email was transmitted by interstate wire from Frances Christine Meneses's firm email address, Cmeneses@meneses.law, and signed "Abogada Meneses," to Plaintiff's successor counsel, refusing to release Plaintiff's client file unless Plaintiff supplied either a "properly executed authorization" bearing a "handwritten electronic signature or wet signature" or a newly executed Form G-28, purportedly under Texas Disciplinary Rule of Professional Conduct 1.05.

b. That stated justification was false and pretextual given that throughout the representation Defendants themselves relied on electronic and digitized signatures for Plaintiff's own immigration filings even with a federal agency (USCIS).

c. The wire was sent in furtherance of the scheme which was to conceal the contents of the false petition/applications filed in Plaintiff's name, to delay Plaintiff's discovery of the fraud, and to protect the fees Defendants had already collected.

d. Frances Christine Meneses sent the email or directed that it be sent.

128. Predicates F-1 and F-3 are supported by documents:

a. F-1 is corroborated by the Vinesign audit trail and the card-charge records,

b. F-3 is corroborated by the March 12, 2026 email from Frances Meneses's firm address.

129. Together with F-2, these allegations plead at least two related predicate acts attributable to Frances Christine Meneses.

***C. Additional wire transmissions in furtherance of the scheme.***

130. In furtherance of the scheme, Defendants also used the interstate wires to:

a. disseminate marketing representations that status could be obtained without departure while concealing the abuse-based theory;

b. process each of Plaintiff's interstate card payments identified above;

c. transmit the completed petition package to USCIS on or about July 10, 2025;

d. enter "N/A" for Plaintiff's contact information on the Form I-360 so that USCIS correspondence would be routed to Defendants; and

e. transmit the pretextual refusals to release Plaintiff's file in March 2026, which concealed the contents of the filing.

131. These transmissions are pleaded as part of the scheme and as additional related acts in furtherance of it.

***D. Relatedness and continuity.***

132. The predicate acts are related:

a. they share the same purpose (generating fees from immigration filings),

b. the same method (concealing the abuse-based theory and manufacturing the appearance of client authorization),

c. the same participants (Defendants and their staff), and

d. the same class of victims (Spanish-speaking immigrant clients).

133. The pattern is open-ended.

a. The concealment of the abuse-based theory, the manufacture of client authorization through digitized signatures, and the withholding of client files are Defendants' regular and ongoing way of conducting business, not isolated events confined to Plaintiff's matter, and they threaten continued repetition.

b. The predicate acts in Plaintiff's matter independently establish closed-ended continuity, spanning from May 2024 through at least March 2026 which is a period of approximately twenty-two months.

134. That the pattern extends well beyond Plaintiff is established by the firm-wide pipeline alleged in Section V and by the materially identical experiences of Clients A, B, and C.

135. The existence of a separate, individual action and a pending putative class action in this District against the same firm and principals (Acosta v. Meneses Law, PLLC, No. 4:26-cv-03930 & Martinez Garcia v. Meneses Law, PLLC, No. 4:26-cv-03531 (S.D. Tex.), docketed as civil-RICO matters and alleging the same high-volume, abuse-based self-petition practice) further supports the firm-wide nature of the conduct.

136. Plaintiff pleads the existence of that public filing only as part of the basis for his pattern allegation and does not adopt as true the allegations asserted by other parties in that action.

***E. The conspiratorial agreement.***

137. The pipeline alleged in Section V could not function without agreement among its participants. Each Defendant named in the conspiracy count agreed to play an assigned part in a common enterprise whose object, which was obtaining and retaining client fees by concealing the abuse-based nature of the representation and manufacturing the appearance of client authorization, was known to each.

138. The agreement is shown by:

a. the firm's departmental structure and standardized scripts;

b. the monthly management meetings at which firm policy was set;

c. a compensation system that paid sales personnel by commission against volume quotas;

d. the repeated execution of identical false certifications across client files; and

e. the participants' continued performance of their roles after the falsity of the filings was or should have been apparent.

139. Frances Meneses set and ratified the policies that produced the false filings.

140. Julio Meneses directed and financed the operation through which the scheme functioned.

141. Robertson repeatedly executed false preparer certifications.

142. Alfonso repeatedly executed false interpreter certifications.

143. Acosta sold the concealed service for quota-based compensation and enforced client retention, including through the April 8, 2026 call to Plaintiff.

144. Each Defendant named in the conspiracy count knew that:

a. the firm's clients were being filed on abuse-based VAWA self-petitions concealed behind the "360" description,

b. that the client-review and interpreter certifications executed in those matters were false, as shown by the standardized "no-VAWA" script,

c. the monthly management meetings at which the practice was set, and

d. the repeated execution of identical false certifications across Plaintiff's matter and the materially identical matters of Clients A, B, and C.

## X. RICO INJURY AND CAUSATION

145. Plaintiff was injured in his business or property by reason of the violations of 18 U.S.C. § 1962. His injury is concrete and quantifiable.

a. First, Plaintiff paid Defendants $13,199.00 in fees—the documented card payments itemized above—for a representation he did not authorize and would not have purchased had its true, abuse-based nature been disclosed.

b. Second, Defendants continue to assert an unpaid balance of approximately $351.00 against Plaintiff under the agreement.

c. Third, Plaintiff incurred, and continues to incur, the costs of recovering his client file, investigating the contents of the false filing, and retaining successor counsel to evaluate and remediate the petition filed in his name, in an amount stated in Section XII.

146. Plaintiff is not a remote or derivative victim. He was the intended source of the enterprise's revenue.

147. The fraudulent scheme targeted him for fees, concealed the actual nature of the representation, used his identity and a false attestation of his authorization to complete the fee-producing service, and then obstructed his efforts to discover what had been filed.

148. His losses are the direct and foreseeable result of the predicate acts, not a derivative consequence of any injury to a third party.

149. There is no more directly injured victim better situated than Plaintiff to recover the fees Plaintiff paid, and no risk of duplicative recovery.

150. Plaintiff is the immediate victim of the fee-generating fraud.

151. First-party reliance is not an element of Plaintiff's RICO claim. The causal connection between the predicate acts and Plaintiff's injury is established through reliance by USCIS, the third party to whom the false certifications and the petition package were directed.

152. USCIS relied on the false preparer and interpreter certifications with each attesting that Plaintiff had reviewed and verified the petition and that it had been interpreted to him in accepting the package and issuing its Form I-797C receipt notice.

153. Had USCIS not accepted the package in reliance on those certifications, the false petition would not have been filed or become pending in Plaintiff's name, and Plaintiff would not have incurred the resulting investigation, file-recovery, successor-counsel, and remediation costs.

154. The agency's acceptance was a foreseeable and intended step in the scheme, not an independent or intervening cause.

155. Plaintiff nonetheless alleges that he, too, was deceived and that had the abuse-based nature of the representation been disclosed, he would not have paid Defendants for it.

156. The relevant measure is not whether Plaintiff would have paid some law firm for some petition, but whether he would have paid these Defendants $13,550.00 for an unauthorized abuse-based petition he says rests on false allegations. He would not have.

157. Plaintiff seeks treble damages, costs, and attorney's fees under 18 U.S.C. § 1964(c).

158. He does not seek RICO damages for personal injury, emotional distress, or speculative future immigration outcomes.

## XI. CAUSES OF ACTION

### COUNT I — Legal Malpractice / Professional Negligence
### (Against Meneses Law, PLLC, Frances Christine Meneses, and Rachel Victoria Robertson)

159. Plaintiff incorporates the preceding paragraphs.

160. Defendant Frances Meneses, as an attorney of record, Defendant Rachel Victoria Robertson, as an attorney of record by her Form G-28 dated July 10, 2025 and as the attorney-preparer of Plaintiff's Forms I-360, I-485, and I-765 as well as Meneses Law, PLLC, each owed Plaintiff the duty to represent him with the competence, care, and diligence of a reasonably prudent immigration attorney.

161. Each Form G-28 established an attorney-client relationship between the signing attorney and Plaintiff and an acceptance of professional responsibility for Plaintiff's matter before USCIS.

162. Defendants breached that duty by, among other things:

   a. failing to evaluate and advise Plaintiff regarding the appropriate lawful immigration strategy;

   b. failing to advise him of the requirements and risks of a VAWA self-petition;

   c. delegating his matter to non-attorney staff without adequate supervision;

d. failing to review the factual allegations of the declaration with Plaintiff in a language he understood; and

e. failing to verify the accuracy of the declaration and forms before submission. Robertson separately breached her professional duty by signing preparer certifications on Plaintiff's Forms I-360, I-485, and I-765 attesting that Plaintiff had reviewed the completed submissions and confirmed their truth and accuracy when, according to Plaintiff, no such review occurred.

163. But for these breaches, Plaintiff would not have had a false or unauthorized petition filed in his name and would not have incurred the resulting investigation, file-recovery, successor-counsel, and remediation costs. Defendants' negligence proximately caused Plaintiff actual damages.

**COUNT II — Breach of Fiduciary Duty**
**(Against Frances Christine Meneses and Meneses Law, PLLC)**

164. Plaintiff incorporates the preceding paragraphs.

165. An attorney-client relationship existed between Plaintiff and Defendants Frances Meneses and Meneses Law, giving rise to fiduciary duties of loyalty, candor, and good faith, and a duty to place Plaintiff's interests above the firm's pecuniary interest.

166. Defendants breached those duties through conduct distinct from the quality of their legal services, including:

a. concealing the abuse-based nature of the representation in order to obtain and retain fees;

b. pursuing a strategy Plaintiff did not choose and would not have chosen;

c. using Plaintiff's name and a digitized copy of his signature to submit a declaration he did not authorize;

d. concealing the contents of the filing;

e. refusing on a pretext to return his file in order to protect the firm and delay detection; and

f. retaining the fees after these breaches.

167. These breaches involved Defendants' disloyalty and self-interest, not mere professional error.

168. Defendants obtained an improper benefit in the form of fees for an unauthorized, fee-driven course of representation and subordinated Plaintiff's interests to the firm's.

169. Plaintiff is entitled to actual damages and, independent of actual damages, to equitable forfeiture of the fees paid to Defendants on account of a clear and serious breach of fiduciary duty.

170. The breach was clear and serious in light of its willfulness, its gravity, its effect on the value of the representation, the threatened and actual harm to Plaintiff, the inadequacy of other remedies, and the public interest in maintaining the integrity of the attorney-client relationship.

171. As a further result of these intentional breaches of fiduciary duty, and in particular Defendants' fabrication and submission, in Plaintiff's name and under oath to a federal agency, of false allegations that his United States citizen wife subjected him to severe abuse, Plaintiff suffered mental anguish.

172. That injury is personal in nature and does not arise merely as a consequence of Plaintiff's economic loss. Plaintiff seeks compensation for the mental anguish proximately caused by Defendants' disloyal and deceptive conduct, separate from any distress attributable to his underlying immigration circumstances.

**COUNT III — Common-Law Fraud**
**(Against Frances Christine Meneses and Meneses Law, PLLC)**

173. Plaintiff incorporates the preceding paragraphs.

174. Defendants Frances Meneses and Meneses Law, PLLC made material misrepresentations and actionable nondisclosures directly to Plaintiff concerning the nature of the representation.

175. Through their sales personnel and their written representation agreement, they represented that they would lawfully fix Plaintiff's status through a "360" process while concealing that they would file an abuse-based VAWA self-petition, and they omitted the abuse-allegation requirement and the factual content they intended to submit in Plaintiff's name.

176. Defendants knew the representations were false or made them recklessly, intended that Plaintiff rely on them, and intended that Plaintiff continue paying for and authorizing the representation.

177. Plaintiff relied on Defendants' representations about the nature of the service in retaining them and paying their fees.

178. Defendants' fraud proximately caused Plaintiff actual damages, including the fees paid and the costs of investigation and remediation.

179. The fraud is independent of any negligence as it rests on affirmative deception, not on the adequacy of legal services.

180. The false preparer and interpreter certifications signed by Defendants Robertson and Alfonso are pleaded as predicate and overt acts in Sections IX and as bases for the conspiracy and knowing-participation claims below, and are not relied upon as direct representations to Plaintiff in this Count.

**COUNT IV — Fraudulent Inducement**
**(Against Frances Christine Meneses and Meneses Law, PLLC)**

181. Plaintiff incorporates the preceding paragraphs.

182. Defendants induced Plaintiff to enter the representation agreement and to pay fees by representing that they would lawfully fix his status through the "360" process while concealing the material fact that they intended to file an abuse-based VAWA self-petition predicated on allegations of spousal abuse.

183. Defendants had no intention of pursuing the lawful family-based petition Plaintiff sought and instead intended from the outset to channel him into the abuse-based filing that their pipeline was designed to produce, as shown by the firm-wide practice alleged in Section V and the absence of any family-based evaluation in Plaintiff's matter.

184. Defendants' intent is confirmed by their charging Plaintiff $3,550.00 on May 22, 2024 which was two days before he electronically signed the representation agreement on May 24, 2024, as reflected in the Vinesign audit trail, thereby collecting fees before any agreement existed.

185. Plaintiff justifiably relied on the inducement by signing the agreement and paying Defendants $13,199.00 toward the agreed $13,550.00 flat fee.

186. Had the abuse-based theory been disclosed, he would not have entered the agreement.

187. Defendants' fraudulent inducement proximately caused Plaintiff actual damages.

188. This claim rests on Defendants' affirmative misrepresentation of the nature of the representation and their concealed intent not to pursue the family-based petition Plaintiff sought and not on the quality of any legal services rendered.

**COUNT V — Fraud by Nondisclosure**
**(Against Frances Christine Meneses and Meneses Law, PLLC) (Pleaded in the Alternative)**

189. Plaintiff incorporates the preceding paragraphs.

190. As Plaintiff's fiduciaries, Defendants had a duty to disclose material facts concerning the nature of the representation. Defendants deliberately failed to disclose that:

a. the “360” process was an abuse-based VAWA self-petition;

b. it required allegations of spousal abuse; that the declaration filed in Plaintiff’s name contained such allegations; and

c. submitting false statements could expose Plaintiff to fraud findings and removal consequences.

191. These facts were material, Plaintiff was ignorant of them and had no equal opportunity to discover them, and Defendants intended Plaintiff to act in reliance on their silence by retaining them, paying fees, and permitting the filing.

192. Plaintiff relied to his detriment, sustaining actual damages.

193. This claim rests on Defendants’ breach of an affirmative duty to disclose material facts, including that they would file abuse-based allegations against Plaintiff’s wife in his name, not on the adequacy of their professional services.

**COUNT VI — Money Had and Received / Unjust Enrichment**
**(Against Meneses Law, PLLC, Meneses Enterprises, LLC, Frances Christine Meneses, and Julio Carlos Meneses) (Pleaded in the Alternative)**

194. Plaintiff incorporates the preceding paragraphs.

195. Defendants Meneses Law, PLLC, Meneses Enterprises, LLC, Frances Christine Meneses, and Julio Carlos Meneses hold money paid by Plaintiff that, in equity and good conscience, belongs to Plaintiff, because the funds were obtained through concealment of the nature of the representation and for a service Plaintiff did not authorize.

196. Plaintiff, and not any third party, paid the fees.

197. To the extent the representation agreement is void, voidable, or does not govern the recipient of the funds, Plaintiff is entitled to restitution of the amounts paid, whether received or controlled by Meneses Law, PLLC, Meneses Enterprises, LLC, or another account controlled by these Defendants.

**COUNT VII — Civil Conspiracy**
**(Against Frances Christine Meneses, Julio Carlos Meneses, Rachel Victoria Robertson, Diana Alfonso, and Alexandra Acosta)**

198. Plaintiff incorporates the preceding paragraphs.

199. Defendants, acting in their individual capacities, combined to accomplish the unlawful object of obtaining and retaining client fees through concealment of the abuse-based representation and the submission of a false, unauthorized petition.

200. Each had a meeting of the minds on that object as each knew of the firm's "no-VAWA" concealment, the manufacture of the declaration, and the practice of certifying client review that had not occurred, and each agreed to perform his or her part, as shown by the standardized scripts, the departmental structure, the reporting relationships, the volume-based compensation, and the repeated participation described in Sections V and IX.

201. Defendants were not merely acting as passive employees within the scope of lawful firm business; each personally participated in deceptive acts, false certifications, revenue retention, or client-retention pressure that furthered the unlawful object and exposed Plaintiff to the injuries alleged.

202. The individual Defendants are pursued in their individual capacities and were compensated through commissions, bonuses, incentive pay, wages or distributions tied to the conduct.

203. Defendants committed unlawful, overt acts in furtherance of the conspiracy, including the false certifications, the concealing retainer, the file-withholding, and the retention threat, and proximately caused Plaintiff actual damages.

204. The underlying torts are the fraud and breach of fiduciary duty alleged above, not negligence.

**COUNT VIII — Knowing Participation in Breach of Fiduciary Duty**
**(Against Julio Carlos Meneses, Rachel Victoria Robertson, Diana Alfonso, and Alexandra Acosta)**

205. Plaintiff incorporates the preceding paragraphs.

206. Frances Meneses and Meneses Law owed Plaintiff fiduciary duties.

207. Each Defendant named in this count had actual knowledge of the attorney-client fiduciary relationship between Plaintiff and the firm.

208. Each named Defendant knowingly participated in the breach of those duties by facilitating conduct beyond the scope of ordinary legal representation:

a. Robertson by falsely certifying client review and authorization to file;

b. Alfonso by falsely certifying interpretation;

c. Acosta by threatening Plaintiff to prevent him from leaving and discovering the breach; and

d. Julio Meneses by directing and maintaining the operational and financial practices that enabled the breach.

209. Defendants' knowing participation proximately caused Plaintiff actual damages and supports joint-and-several liability with the breaching fiduciary.

**COUNT IX — Texas Deceptive Trade Practices–Consumer Protection Act**
**(Against Meneses Law, PLLC, Meneses Enterprises, LLC, Frances Christine Meneses, and Julio Carlos Meneses)**

210. Plaintiff incorporates the preceding paragraphs.

211. Plaintiff is a consumer who sought and acquired services from Defendants.

212. Defendants' conduct falls within the exceptions to the professional-services exemption of Tex. Bus. & Com. Code § 17.49(c), because it consists of

   a. express misrepresentations of material fact that are not advice, judgment, or opinion;

   b. failures to disclose information known at the time of the transaction that were intended to induce Plaintiff into a transaction he otherwise would not have entered (§ 17.46(b)(24)); and

   c. unconscionable actions that took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree (§ 17.45(5)).

213. These acts include:

   a. representing that non-attorney sales personnel were "abogados" or "licenciadas";

   b. representing that Defendants would lawfully fix Plaintiff's status while concealing the abuse-based theory;

   c. failing to disclose the abuse-based nature and risks of the filing;

   d. misrepresenting that the client file was protected from disclosure; and

   e. threatening immigration consequences to retain him.

214. Defendants' conduct was a producing cause of Plaintiff's economic damages.

215. Plaintiff served written notice under Tex. Bus. & Com. Code § 17.505 on July 3, 2026, advising Defendants in reasonable detail of his specific complaint and of the economic damages, mental-anguish damages, and expenses, including attorney's fees, claimed.

216. To the extent Defendants contend the DTPA claim may not proceed until the statutory sixty-day notice period has expired, Plaintiff does not oppose abatement of the DTPA claim alone pending expiration of that period.

217. Defendants' deceptive and unconscionable conduct was committed knowingly and intentionally and was a producing cause of Plaintiff's mental anguish, for which Plaintiff seeks damages under Tex. Bus. & Com. Code § 17.50(b)(1).

218. Plaintiff's mental anguish is referable to Defendants' own conduct, including the concealment of the abuse-based representation, the use of his identity to submit false sworn accusations against his wife, and the resulting exposure, and is distinct from any anxiety attributable to his immigration status itself.

**COUNT X — Civil RICO: 18 U.S.C. § 1962(c)**
**(Against Frances Christine Meneses)**

219. Plaintiff incorporates the preceding paragraphs, including the enterprise allegations in Section VIII, the predicate-act allegations in Section IX, and the injury and causation allegations in Section X.

220. Meneses Law, PLLC is an enterprise engaged in and affecting interstate and foreign commerce.

221. Frances Christine Meneses is a "person" distinct from that enterprise who participated in the operation or management of its affairs, as alleged in Section VIII.

222. Frances Meneses conducted the enterprise's affairs through a pattern of at least two related predicate acts, specifically Predicates F-1, F-2, and F-3, as set out in Section IX.

223. The acts are related and amount to, or threaten, continued activity.

224. Plaintiff was injured in his business or property by reason of this violation, as alleged in Section X, and seeks treble damages, costs, and attorney's fees under 18 U.S.C. § 1964(c).

**COUNT XI — Civil RICO Conspiracy: 18 U.S.C. § 1962(d)**
**(Against Frances Christine Meneses, Julio Carlos Meneses, Rachel Victoria Robertson, Diana Alfonso, and Alexandra Acosta)**

225. Plaintiff incorporates the preceding paragraphs.

226. Each Defendant named in this count agreed that a member of the conspiracy would conduct the affairs of the Meneses Law enterprise through a pattern of racketeering activity, and knew of and agreed to the overall object of the scheme which was to obtain and retain client fees through concealment and the submission of false, unauthorized immigration filings. A conspirator need not personally commit two predicate acts.

227. The agreement is shown by the facts alleged in Sections V and IX as to each Defendant:

   a. Frances Meneses set and ratified the firm policies that produced the false filings;

b. Julio Meneses directed and financed the operations through which the scheme functioned, including the monthly management meetings at which firm policy was set and the use of Meneses Enterprises as the revenue vehicle; Robertson repeatedly executed false preparer certifications;

c. Alfonso repeatedly executed false interpreter certifications; and

d. Acosta sold the concealed service for quota-based compensation, served as the firm's public face discouraging second opinions, and enforced client retention through the April 8, 2026 threat.

228. Each of these Defendants knew that the "360" description concealed an abuse-based VAWA self-petition and that the certifications of client review and interpretation were false when made, and each agreed to perform his or her assigned role in the common scheme.

229. As a result of the conspiracy and the overt acts in furtherance of it, Plaintiff was injured in his business or property and seeks treble damages, costs, and attorney's fees under 18 U.S.C. § 1964(c).

## XII. DAMAGES AND REMEDIES

230. *Actual damages*. Plaintiff seeks his actual economic damages, including the $13,199.00 in fees paid to Defendants; the unpaid balance of approximately $351.00 that Defendants claim against him under the agreement; and the attorney's fees and costs incurred to recover his file, investigate the false filing, and obtain successor counsel, in an amount to be proven at trial. Plaintiff continues to incur additional file-recovery and remediation expenses.

231. *Foreseeable remediation*. Separately from the economic injury described above, Plaintiff seeks the reasonably foreseeable cost of remediating Defendants' conduct, including the cost of seeking withdrawal of the false Form I-360 and of defending against any removal or inadmissibility consequence proximately caused by that filing, in an amount to be proven at trial and estimated to exceed $15,000. This category does not seek damages for any speculative immigration outcome; it seeks the cost of the corrective work Defendants' conduct made necessary.

232. *Mental anguish*. Plaintiff seeks damages for his own mental anguish proximately caused by Defendants' fraud, breach of fiduciary duty, and knowing and intentional violations of the DTPA and in particular, Defendants' fabrication and federal filing, in Plaintiff's name and under oath, of false allegations that his United States citizen wife subjected him to severe abuse.

233. This injury is personal in nature and does not arise merely as a consequence of Plaintiff's economic loss. Plaintiff does not seek mental-anguish damages on his negligence claim, does not seek such damages under RICO, and does not seek damages for distress attributable to any speculative immigration outcome as he seeks only the mental anguish referable to Defendants' deceptive and disloyal conduct.

234. *Fee forfeiture*. Independent of actual damages, Plaintiff seeks equitable forfeiture and disgorgement of the fees paid to Defendants on account of the clear and serious breach of fiduciary duty alleged in Count II.

235. *Exemplary damages*. Because Defendants' fraud and breach of fiduciary duty were committed knowingly, intentionally, and with malice, Plaintiff seeks exemplary damages under Tex. Civ. Prac. & Rem. Code ch. 41. The conduct alleged includes acts described in Tex. Penal Code § 32.46 (securing execution of a document by deception), which, if proven, may remove the statutory cap on exemplary damages under § 41.008(c).

236. *Statutory and treble damages*. Plaintiff seeks additional damages under the DTPA for conduct committed knowingly or intentionally, and treble damages, costs, and attorney's fees under 18 U.S.C. § 1964(c). Plaintiff will elect between DTPA additional damages and Chapter 41 exemplary damages for the same conduct as required by law and pleads them in the alternative.

237. *Equitable relief—production of the client file*. Plaintiff seeks an order requiring Defendants to produce his complete client file, to which he is entitled, including all correspondence, filings, supporting evidence, notices, intake and internal notes, audio recordings, and payment records.

238. Attorney's fees, costs, and interest. Plaintiff seeks attorney's fees and costs under 18 U.S.C. § 1964(c), Tex. Bus. & Com. Code § 17.50, and, as applicable, Tex. Civ. Prac. & Rem. Code ch. 38, together with pre- and post-judgment interest.

## XIII. JURY DEMAND

239. Plaintiff demands a trial by jury on all issues so triable.

## XIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ronny Alexander Ramirez Canales respectfully requests that the Court enter judgment against Defendants and award:

A. Actual and economic damages in an amount to be proven at trial;
B. Damages for mental anguish proximately caused by Defendants' fraud, breach of fiduciary duty, and knowing violations of the Texas DTPA;
C. Reasonably foreseeable cost of remediating the false filing, in an amount to be proven at trial and estimated to exceed $15,000;

D. Equitable forfeiture and disgorgement of fees paid to Defendants;
E. Restitution under money had and received / unjust enrichment, in the alternative;
F. Additional damages under the Texas DTPA for knowing or intentional conduct;
G. Treble damages, costs, and attorney's fees under 18 U.S.C. § 1964(c);
H. Exemplary damages under Tex. Civ. Prac. & Rem. Code ch. 41;
I. An order requiring Defendants to produce Plaintiff's complete client file;
J. Pre- and post-judgment interest, costs of court, and attorney's fees as allowed by law; and
K. Such other and further relief, at law or in equity, to which Plaintiff is justly entitled.

Dated: July 3, 2026

Respectfully submitted,

***/s/ Robert Anthony Alvarez Sr.***

Robert Anthony Alvarez, Sr.
Avanti Law Group, PLLC
S.D. Tex. Bar No. 3961057 | Michigan Bar No. P66954
600 28th Street SW, Wyoming, MI 49509
(616) 257-6807 | ralvarez@avantilaw.com
Lead Counsel for Plaintiff

***/s/ Jonathon A. Muñoz***

Jonathon A. Muñoz
Law Nerd LLC
Texas Bar No. 24124571 | S.D. Tex. Bar No. 3933549
2112 S. Shary Rd., Ste. 13, Mission, Texas 78572 | jonathon.munoz@lawnerdllc.com
Co-Counsel for Plaintiff

**Attorneys for Plaintiff Ronny Alexander Ramirez Canales**

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2026, I electronically filed the foregoing Plaintiff's First Amended Complaint and Jury Demand with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

***/s/ Robert Anthony Alvarez Sr.***
Robert Anthony Alvarez Sr.